UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885-MCR-GRJ |
| | Judge M. Casey Rodgers |
| This Document Relates to: *Shanika J. Roper* No. *7:20-cv-02945-MCR-GRJ* | Magistrate Judge Gary R. Jones |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants respectfully move for summary judgment on all claims.

Critical issues pertaining to Plaintiff Shanika Roper's claims are currently on appeal in the Eleventh Circuit. *See*, *3M Company v. Estes, et al.*, Nos. 21-13131, 21-13133, 21-13135 (11th Cir.). Specifically, Roper's claims are barred by the government contractor defense. Also at issue on appeal is the applicability of the Noise Control Act's combat-use exemption to the CAEv2. Should these issues be resolved in Defendants' favor on appeal, all of Roper's claims would be subject to dismissal. Defendants expressly preserve reliance on this defense and statutory exemption and reserve the right to raise them in supplemental summary judgment briefing when the appeal is decided.

## MEMORANDUM OF LAW

Roper claims defects in Defendants' Dual-Ended Combat Arms Earplug ("the CAEv2") caused her to experience tinnitus/hearing loss from military noise exposure. The Complaint asserts 15 claims. *See* First Amend. Short-Form Complaint, ECF No. 13. All fail under Alabama law.[1]

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Roper was in the Army Reserves from August 2001 to October 2018. Ex. 1, Roper 2/1/22 Dep. 34:14–18; Ex. 2, S_Roper_VA_touhy DD Form 214.

2. Throughout her time with the military, Roper has been an administrative clerk. Ex. 1, Roper 2/1/22 Dep. 38:7–11.

3. Roper did not get to choose the hearing protection she used while in the military. *Id.* at 64:13–16.

4. Roper does not remember when she was first given the CAEv2, if she received any instructions on what each end was to be used for, if the range instructor demonstrated how to use them, or if she received a wallet card. Ex. 1, Roper 2/1/22 Dep. 53:10–19, 62:6–12, 63:20–24, 68:4–10, 71:22–72:9.

5. Roper did not rely on any statements about the CAEv2's safety or performance in wearing them and does not recall seeing any advertising for them. *Id.* at 71:15–21.

---

[1] The parties agree that Alabama law applies to Plaintiff's claims.

2

6. Roper remembers the CAEv2 came in a little plastic bag with writing on it but does not recall what the writing said. *Id.* at 64:4–12.

7. Roper attended basic training in Fort Jackson, South Carolina in 2001. *Id.* at 41:24–42:3. She was exposed to loud noises on the range while in basic training and used "whatever" in-the-ear hearing protection was provided; she does not recall what it was. *Id.* at 42:4–24. She was also involved in night-fire training. *Id.* at 54:10–55:1. After basic training and until 2004, Roper was stationed in Rome, Georgia. *Id.* at 36:16–23.

8. In 2003 to 2004, Roper was deployed to Iraq as a postal clerk, stationed in a mail processing building; she was not deployed again. *Id.* at 35:1–20, 38:3–6, 55:16–21.

9. Roper flew on a C-130 military aircraft to and from Iraq and wore hearing protection but does not recall the type—just that it was in-the-ear. *Id.* at 61:3–18.

10. Roper operated Humvees and a two-and-a-half-ton truck about two or three times a week in Iraq. She wore a helmet and in-the-ear hearing protection that she alleges was the CAEv2, but admits she does not really remember if that is accurate. *Id.* at 48:22–49:18, 58:22–59:23, 60:4–18.

11. From 2005 to 2009, Roper was stationed at Fort Riley, Kansas. *Id.* at 36:4–7. From 2009 to 2012, she was stationed between Atlanta, Georgia and Fort

3

Jackson, South Carolina. *Id.* at 36:24–15. From 2012 to 2014, she was at Fort Benning, Georgia. *Id*. at 36:17–18. She then went to Redstone Arsenal in Huntsville, Alabama, until she was discharged in 2018. *Id*. at 36:17–21

12. Roper had regular weapons training with her M16 and a 9mm firearm twice a year; she never used either weapon outside of the range nor did she discharge any other type of gun at the range. *Id.* at 48:5–13, 50:20–51:25, 52:7–10, 53:24–54:4.

13. Roper used whatever in-the-ear hearing protection was provided at the range; she initially testified she did not recall any specifics about the protection. *Id.* at 48:14–21. Roper testified later that she used the CAEv2 at the range and could not remember any other hearing protection she used while at the range or in the military in general. *Id.* at 52:1–6, 67:20–24. Later still, she said she had used "foamies" once or twice on the range. *Id.* at 73:10–20.

14. At the firing range, Roper got her earplugs from a box with many other pairs in it; she threw them away after use. *Id.* at 65:5–66:23, 52:14–22. Outside of the range, she got earplugs (allegedly, the CAEv2) from her unit or supply section; again, she threw them away after use. *Id*. at 66:25–67:24.

15. Roper does not remember what the CAEv2 looked like. *Id*. at 63:1–5, 52:23–25.

4

16. She does not know the difference between the ends of the CAEv2. *Id.* at 68:4–10, 71:22–72:1.

17. She does not recall what CAEv2 color end she inserted in her ear; she just put them in her ear and did not choose one CAEv2 color over the other. *Id.* at 63:10–19, 72:10–13.

18. She does not recall the CAEv2 impeding her ability to hear commands. *Id.* at 72:14–24.

19. Roper remembers a few instances when the CAEv2 fell out of her ears but does not remember the specifics and does not recall telling an officer about it. She never raised concerns about it and did not really have an opinion of the CAEv2—they were just earplugs to her. *Id.* at 74:13–75:13.

20. The last time Roper used the CAEv2 was in 2017 or 2018. *Id.* at 18:25–19:7. Roper did not use the CAEv2 as a civilian. Ex. 3, Unfiled Census Form, p. 5.

21. Roper began experiencing tinnitus in 2014 or 2015 and describes it as an "itch"; she no longer experiences it often. Ex. 1, Roper 2/1/22 Dep. 91:9-11, 92:8–18, 99:19–22. Sometimes a ringing accompanies the itch, but the ringing also occurs at other times, as a lasting effect to hearing a loud noise. *Id.* at 98:15–21.

22. Roper spoke to doctors about the feeling in her ear around 2015 to 2016 and they told her to stay away from noises or anything that irritates her ear. *Id.* at 97:9–18.

23. She has not received a medical diagnosis related to her hearing. *Id.* at 97:19–23.

24. She does not recall a doctor telling her that her alleged hearing loss was caused by the CAEv2. *Id.* at 101:22–25.

25. Roper has no medical expenses related to her alleged injuries, does not use a hearing aid, and is not on medication for hearing loss. *Id.* at 16:6–10, 99:12–14, 100:3–6, 117:11–15. Her alleged injury has not impeded her ability to do day-to-day tasks. *Id.* at 102:1–4.

26. The occasional feeling in her ear does not prevent her from working and at her current job; she wears a headset that allows her to adjust the volume to not irritate her ear. *Id.* at 102:5–9, 113:4–7, 116:16–117:6, *see id.* at 95:2–15

27. Roper was discharged from the Army Reserve in October 2018. Her counsel has entered into a tolling agreement extending Roper's limitations period from October 2020 to December 2021.

28. Roper filed suit on September 1, 2021. First Amend. Short-Form Complaint, ECF No. 13.

## **ARGUMENT**

Summary judgment must be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**I.      Summary judgment is required on all of Roper's claims because she cannot prove the CAEv2 caused her alleged injuries.**

"Regardless of the cause of action asserted, whether a defective product caused a plaintiff's alleged injuries is 'an essential element of all product liability cases.'" *Lowery v. Sanofi-Aventis LLC*, 535 F. Supp. 3d 1157, 1175 (N.D. Ala. 2021).

Roper thus must prove the CAEv2 proximately caused her alleged injuries. To do so, she must establish that she actually used the product. But Roper cannot identify when she allegedly first received the CAEv2 or began using them; she cannot describe the CAEv2; and she cannot specify when she wore the CAEv2, as opposed to other hearing protection. Without sufficient evidence that she used the CAEv2, Roper's claims fail.

Moreover, the only proximate cause evidence Roper offers is from her case-specific expert, Dr. Richard Tyler. As discussed in Defendants' Motion to Exclude, Dr. Tyler's opinions are outside his expertise, he failed to perform a reliable differential etiology, and he failed to conclude via scientific methods that Roper's alleged injuries were caused by the CAEv2 as opposed to other potential causes. Dr. Tyler's testimony must be excluded. Without it, Roper cannot establish any of her claims.

## II. Roper's claims are subject to summary judgment on their merits.

### A. Roper's strict-liability claims (Counts II & IV) fail because the AEMLD governs them.

Roper asserts strict-liability theories for design defect and failure to warn. But Alabama strict-liability claims are governed by the Alabama Extended Manufacturers' Liability Doctrine (AEMLD). *Bodie v. Purdue Pharma Co.,* 236 F. App'x 511, 518 n.9 (11th Cir. 2007). An AEMLD claim "retains the negligence-based notion of 'fault' on the part of the manufacturer, supplier or retailer, rather than adhering to the 'no-fault' system posited in a traditional strict liability jurisdiction." *Id.* Roper's strict-liability claims should be construed under the AEMLD. *See Veal v. Teleflex, Inc.*, 586 So. 2d 188, 191 (Ala. 1991).

### B. Roper's design defect claims (Counts I and II) fail as she provides no evidence on alternate designs.

To prevail on a design defect claim under a theory of negligence or under the AEMLD, Roper must prove, *inter alia*, that "a safer, practical, alternative design was available to the manufacturer at the time it manufactured its product." *Richards v. Michelin Tire*, 21 F.3d 1048, 1056 (11th Cir. 1994) (citations omitted). This includes proving that her "injuries would have been eliminated or in some way reduced by use of the alternative design," and that "the utility of the alternative design outweighed the utility of the design actually used,"

> taking into consideration such factors as the intended use of the [product], its styling, cost, and desirability, its safety aspects, the foreseeability of the particular accident, the likelihood of injury,

8

and the probabl[e] seriousness of the injury if that accident occurred, the obviousness of the defect, and the manufacturer's ability to eliminate the defect[.]!

*Richards*, 21 F.3d at 1056 (first and second alterations in original) (quoting *Beech v. Outboard Mar.*, 584 So. 2d 447, 450 (Ala. 1991)). "The fact that an alternative design existed which would have reduced or eliminated [the plaintiff's] injuries does not mean that the alternative design was of greater overall safety." *Richards*, 21 F.3d at 1057. !

Roper's case-specific expert, Dr. Tyler, identifies other earplugs available at the time Roper used the CAEv2. Ex. 4, Tyler 7/1/22 Dep. p. 90:22–91:14; Ex. 5, Tyler Report pp. 11–2. But he failed to provide any evidence for how their utility allegedly outweighed the utility of the CAEv2 design, nor evidence to prove they would have prevented or reduced Roper's injuries. *See id*. Thus, Roper's design defect claims fail.

    **C.**    **Roper cannot prevail on her failure-to-warn claims (Counts III and XXIV) for lack of evidence.**

Whether based on negligence or considered under the AEMLD, a failure-to-warn claim requires proof, *inter alia*, of proximate causation. *Bodie,* 236 F. App'x at 518. The plaintiff "must show not only that an inadequate warning was given, but also that an adequate warning would have prevented her injury." *Garrison v. Novartis Pharms.*, 30 F. Supp. 3d 1325, 1333 (M.D. Ala. 2014) (citations omitted); *Emody v. Medtronic*, 238 F. Supp. 2d 1291, 1296 (N.D. Ala. 2003) (under AEMLD

theory, plaintiff could not recover for failure-to-warn where physician did not rely on labeling and warnings in using allegedly defective medical device); *Gurley v. American Honda Motor*, 505 So. 2d 358, 361 (Ala.1987) (negligent failure-to-warn claim fails absent evidence that warning would have been read and heeded and would have kept the accident from occurring).

A plaintiff who does not read or rely on the manufacturer's warnings, cannot recover on a failure to warn claim. *E.R. Squibb & Sons v. Cox*, 477 So. 2d 963, 971 (Ala. 1985); *Chase v. Kawasaki Motors., U.S.A.*, 140 F. Supp. 2d 1280, 1287–88 (M.D. Ala. 2001) (granting summary judgment where no one read vehicle owner's manual before accident; there was no evidence that allegedly inadequate warning caused injury). Roper did not read or rely on any instructions, warnings, advertising, when using the CAEv2.

No evidence shows a different warning to the government would have avoided injury by causing the government not to purchase the CAEv2. Nor is there evidence a different warning would have prevented Roper's injury, or that Roper would have read different warnings if provided.  Roper received her CAEv2 from a box at the range that contained a bunch of earplugs, i.e., in a bulk shipment. The Court has ruled that, consistent with the military's instructions not to provide instructions *inside* the bulk shipments of CAEv2, Defendants could have provided warnings to servicemembers by "affixing warnings to the outside of the [bulk shipment]

boxes."[2] But there is no evidence Roper would have seen warnings affixed to the bulk-shipment box. Rather, she testified she just grabbed a pair of earplugs from a container at the range. *See* Ex. 1, Roper 2/7/22 Dep. 66:6–23.

Nor has Roper provided any evidence that she would have heeded additional instructions or warnings. Roper wore whatever earplug was provided to her in the military. She did not rely on any statements about the CAEv2's safety or performance when she used them. There is no evidence that other warnings or instructions would have changed her behavior. Roper's failure-to-warn claims fail due to lack of proof.

### D. Roper's express warranty (Count V) and implied warranty (Count VI) claims are subject to summary judgment.

Roper's breach of express and implied warranty claims are subject to summary judgment.

#### 1. Breach of express and implied warranty claims fail without proof of pre-suit notice.

Pre-suit notice is mandatory for a breach of warranty claim under Alabama law. Ala. Code § 7-2-607(3)(a); *Lowery*, 535 F. Supp. 3d at 1174; *Hobbs v. Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1285–86 (M.D. Ala. 2001). Roper has produced no proof that, prior to filing suit, she provided notice to Defendants. Accordingly, her warranty claims fail.

---

[2] Case No. 3:19-md-02885, Dkt. 1280 at 54.

### 2. The breach of implied warranty claim is subsumed by the AEMLD.

"[C]ourts applying Alabama law have seen fit to subsume U.C.C.-based breach of implied warranty claims into tort and product liability claims, where the product is fit for its intended use and there is no evidence of 'non-merchantability' other than a general allegation that the product contains inherent dangers." *Bodie*, 236 F. App'x at 523; *see, e.g.*, *Shell v. Union Oil Co.*, 489 So. 2d 569, 571 (Ala. 1986). In other words, a claim for breach of implied warranty exists only when a product fails to accomplish its primary purpose, not when the product accomplishes this purpose but has allegedly dangerous side effects. As a matter of law, the breach of implied warranty claim should be dismissed.

### 3. Roper's breach of implied warranty claims also fail for lack of proximate cause.

Regardless of whether Roper asserts a claim for breach of the implied warranty of merchantability or of the warranty of fitness for particular purpose, she must prove the existence of the warranty, breach of that warranty, and proximate cause (i.e., that her alleged injury proximately resulted from the breach). *E.g., Chase*, 140 F. Supp. 2d 1280, 1288–89 (citing *Ex parte General Motors*, 769 So. 2d at 912; *Barrington Corp. v. Patrick Lumber Co., Inc.*, 447 So. 2d 785, 787 (Ala. Civ. App. 1984)). She has no evidence to support those claims: she has identified no warranty, nor any connection between such a warranty and her alleged injury. As

discussed, she connects her injury to her alleged use of the CAEv2 only via testimony from Dr. Tyler; because that testimony must be excluded, she cannot prove causation.

### E. Roper's fraud-based claims (Counts VII-X, XIII) fail.

#### 1. Roper has not pleaded fraud with particularity.

A plaintiff must plead fraud with particularity. Fed. R. Civ. P. 9(b). This requires the plaintiff to "alert the defendant to the precise misconduct with which he is charged." *Bodie*, 236 F. App'x at 524. Roper cannot establish, with the requisite specificity, evidence demonstrating the "precise misconduct" alleged. She has not identified any representations made by Defendants directly to her. Roper's descriptions do not satisfy Rule 9(b)'s requirement that she plead with particularity the facts "as to time, place, and substance of the defendant's alleged fraud." *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1308 (11th Cir. 2002).

#### 2. Roper cannot show reasonable reliance.

Roper asserts several claims premised on alleged fraud: Negligent Misrepresentation (Count VII), Fraudulent Misrepresentation (Count VIII), Fraudulent Concealment (Count IX), "Fraud and Deceit" (Count X), and Consumer Fraud (Count XIII). In Alabama, a "party alleging *any form* of fraud must present evidence of 'reasonable reliance.'" *AstraZeneca LP v. State*, 41 So. 3d 15, 26 (Ala. 2009) (citation omitted; emphasis in original).

13

Roper cannot establish reasonable reliance. Roper cannot prove any misrepresentations made by Defendants directly to her, and she testified she did not rely on any representation made by Defendants. Ex. 1, Roper 2/1/22 Dep. 71:15–21. Because Roper did not rely on representations and does not otherwise provide any evidence of receiving instructions or warnings from military personnel on the CAEv2, Defendants are entitled to summary judgment on all Roper's fraud-based claims.

### F.    Gross negligence (Count XI) is not a cognizable claim.

In Alabama, "gross negligence" is "negligence" and is not a separate cause of action." *Miller v. Bailey*, 60 So.3d 857, 867 (Ala. 2010). This claim fails. !

### G.    Negligence per se (Count XII) is not cognizable in Alabama.

"[T]here is no Alabama tort cause of action known as negligence per se. Rather, negligence per se is merely a subsidiary doctrine of negligence whereby a party is considered negligent as a matter of law because it acted in violation of a statute which was designed to prevent the type of harm that occurred." *Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1247 (N.D. Ala. 2013) (citing *Parker Bldg. Servs. Co. v. Lightsey*, 925 So. 2d 927, 930–31 (Ala. 2005)).

### H.    Roper's Consumer Protection claim (Count XIII) fails.

The Alabama Deceptive Trade Practice Act ("ADTPA") allows plaintiffs to choose between ADTPA or common-law remedies. Ala. Code § 8-19-15(a); *Cheminova Am. Corp. v. Corker*, 779 So. 2d 1175, 1183 (Ala. 2000). Pursuing one

14

waives the other. Ala. Code § 8-19-15(b). Roper has waived any ADTPA claim by asserting multiple fraud-based claims. Moreover, the ADPTA applies to "consumer goods"; the CAEv2 do not fall within that definition. *Meeks v. Xtreme Cycle Supply, No.* 2006 WL 780580, *4 (M.D. Ala. 2006).

### I. The unjust-enrichment claim (Count XV) fails.

Alabama law does not permit a plaintiff to bring an unjust-enrichment claim alongside an express-warranty claim. *Callaway v. E.H. Smith Elec. Contractors, Inc.*, 814 So. 2d 893, 899 (Ala. Civ. App. 2001). Roper asserts an express-warranty claim, so the unjust-enrichment claim fails.

### III. Roper cannot recover punitive damages (Count XVI).

"There is no separate cause of action in Alabama for punitive damages." *Holmes v. Behr Process Corp.*, 2015 WL 4941379, at *4 (N.D. Ala. Aug. 19, 2015) (alteration and citation omitted). "Rather, punitive damages are only part of the relief prayed for in a claim and the complaint must allege the requisite basis for the award." *Rhoton v. 3M Co.*, 2015 WL 7770234, at *4 (N.D. Ala. Dec. 3, 2015). Roper's separate punitive-damages claim is not cognizable. Moreover, punitive damages are not available for Roper's negligence and warranty claims (Counts I, III, V, VI, VII, XI, XII). *Lafarge N. Am., Inc. v. Nord*, 86 So. 3d 326, 335 (Ala. 2011); *West v. Friday, Inc.*, 403 So. 2d 213, 214 (Ala. 1981). Even for causes of action where they are available, a plaintiff seeking punitive damages must "prove by clear and

convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice with regard to the plaintiff." Ala. Code § 6-11-20. Because Roper has not provided clear and convincing evidence of deliberate and intentional conduct, Roper cannot be awarded punitive damages.

## CONCLUSION

The Court should enter summary judgment on all of Roper's claims.

Respectfully submitted,

*/s/ Tiffany deGruy*
Tiffany deGruy
*(admitted pro hac vice)*
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
tdeGruy@bradley.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC, and Aearo, LLC*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(F), counsel for Defendants certify that this memorandum contains 3,452 words, excluding the case style, signature block, and certificates of compliance with the Local Rules.

Respectfully submitted,

*/s/ Tiffany deGruy*
Tiffany deGruy
*(admitted pro hac vice)*
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
tdeGruy@bradley.com

Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC, and Aearo, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of July, 2022, I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of Florida using the electronic case filing system of the Court, which will send electronic service to all registered counsel of record.

/s/ *Tiffany deGruy*
Tiffany deGruy
(*admitted pro hac vice*)
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
tdeGruy@bradley.com

*Counsel for Defendants 3M Company, 3M Occupational Safety LLC, Aearo Technologies LLC, Aearo Holding, LLC, Aearo Intermediate, LLC, and Aearo, LLC*