## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: 3M COMBAT ARMS EARPLUG PRODUCTS LIABILITY LITIGATION | Case No. 3:19-md-2885 |
| This Document Relates to: *Roper v. 3M Company* Case No. 7:20-cv-02945-MCR-GRJ | Judge M. Casey Rodgers Magistrate Judge Gary R. Jones |

## PLAINTIFF'S RESPONSE TO DEFENDANTS'[1] MOTION FOR SUMMARY JUDGMENT

Plaintiff files this Response to Defendants' Motion for Summary Judgment and requests that the Court deny Defendants' Motion for Summary Judgment in these respects:

- Plaintiff provided ample testimony regarding her use of the CAEv2 (Subsection I);
- Plaintiff provided competent, admissible expert testimony from Dr. Richard Tyler on causation (Subsection I);
- Plaintiff's strict liability claims should not be dismissed but rather construed under the AEMLD (Subsection II.A);

---

[1] After moving for summary judgment, Aearo and other 3M subsidiaries filed for chapter 11 bankruptcy and are currently subject to an automatic stay. 3M, however, "is not a debtor" and thus not subject to the stay. MDL Dkt. 3329. For the purpose of Plaintiff's Response, "Defendants" means only whichever Defendant(s) may properly be subject to an order of this Court when the motion is adjudicated.

- Plaintiff has provided enough expert testimony of safer alternatives to withstand summary judgment (Subsection II.B.);
- Plaintiff has produced substantial evidence from which a jury could find that Defendants' failure to warn was the cause of Plaintiff's injuries (Subsection II.C),
- Plaintiff's fraud-based claims present fact issues on the element of justifiable reliance (Subsection II.E); and
- Whether Plaintiff is entitled to an award of punitive damages is not ripe until the time of trial (Subsection III).

In support, Plaintiff relies upon the pleadings and the following memorandum of law.[2]

# I. Argument

## 1. Plaintiff testified multiple times during her deposition that she used the CAEv2.

Contrary to Defendants' assertion, Plaintiff testified numerous times that she used the CAEv2. For example, Plaintiff stated that she wore the Combat Arms Earplugs as her hearing protection device every time she went to the gun range to fire her M16, which occurred twice a year. Ex. 1 (Plaintiff Deposition) at 51:16-52:3. Plaintiff similarly testified that when she would fire her 9mm pistol at the gun range, she

---

[2] In addition to the other arguments addressed herein, Defendants' reservation of rights regarding the government contractor defense and Noise Control Act has no basis in law or fact. No issues currently on appeal in the Eleventh Circuit would warrant dismissal of all of Plaintiff's claims. *See, e.g.,* MDL Dkt. 1280 at 55 ("Defendants concede that the [government contractor] defense applies only to design defect and failure-to-warn claims."); *Estes,* Dkt. 53 at 21-22 (adjudicating combat-use exception as to negligence-per-se claim only).

was also wearing her Combat Arms Earplugs. *Id.* at 52:23-53:5. Plaintiff also responded affirmatively when she was asked whether she recalled having an earplug that had a yellow end and green end—a clear reference to the Combat Arms Earplugs.   *Id.* at 63:6-9. Finally, when asked whether she recalled using any other hearing protection other than the green and yellow earplugs, Plaintiff testified that she did not. *Id.* at 67:20-24. This testimony is undisputed and, at worst, creates a fact-issue as to whether Plaintiff used the CAEv2 while in the military. Defendant's motion for summary judgment on all of Plaintiff's claims based on her alleged lack of evidence of use of the CAEv2's should thus be denied.

**2.    Dr. Tyler has provided competent, admissible specific causation expert testimony establishing that the CAEv2 caused Plaintiff's injuries.**

Defendants' argument about expert testimony provided by Dr. Richard Tyler puts the cart before the horse: Defendants apparently assume that this Court will exclude Dr. Tyler from providing expert testimony on Plaintiff's behalf. Yet as explained in Plaintiff's Response to Defendants' Motion to Exclude Testimony From Plaintiff's Expert Richard S. Tyler, Ph.D. (filed at the same time as this motion), Dr. Tyler has provided competent, admissible expert evidence relating to the issue

of specific causation. Plaintiff incorporates the arguments made in that response here and asks the Court to reject Defendants' Motion to Exclude based on those arguments. Because Plaintiff has provided admissible expert testimony establishing her injuries were proximately caused by the CAEv2, Defendants argument fails as a matter of law. Defendants request for summary judgment based on the exclusion of Dr. Tyler as stated in Subsection I of their Motion for Summary Judgment should therefore be denied.

3.  **Plaintiff's strict liability claims should be construed as claims under the Alabama Extended Manufacturer's Liability Doctrine (AEMLD).**

Plaintiff's strict liability counts (II & IV) do not "fail," but rather should be construed as AEMLD claims "[b]ecause Alabama's analogous cause of action for strict product liability is an AEMLD claim [ . . . .]" *Bodie v. Purdue Pharma Co.*, 236 Fed. App'x 511, 518 n.9. In *Bodie*, the Eleventh Circuit clarified that Alabama law follows "a modified version of strict liability" that "in practice [. . .] is similar to a traditional strict product liability claim." *Id.* The court clarified the role that "fault" plays under the AEMLD:

Although AEMLD liability is described as a "fault-based" system, in actuality the defendant's "fault" in an AEMLD

> action—or the required scienter—"is supplied by [his] selling
> a product in a defective condition." That is, "[t]he fault of the
> manufacturer [. . .] is that he has conducted himself
> unreasonably in placing a product on the market which will
> cause harm"; the existence of a "dangerously unsafe chattel is
> negligence within itself."

*Id.* (citations omitted) (quoting *Sears, Roebuck & Co., Inc. v. Haven Hills Farm*, 395 So.2d 991, 994 (Ala. 1981) and *Atkins v. Am. Motors Corp.*, 335 So.2d 134, 140 (Ala. 1976)). Accordingly, Plaintiff's strict liability counts should not be dismissed, but rather construed as AEMLD claims.

### 4.  Plaintiff has provided enough expert testimony of safer alternatives to withstand summary judgment.

Defendants ignore the totality of Plaintiff's evidence to argue that Plaintiff has not satisfied his evidentiary burden at the summary judgment stage to show a safer alternative design. Plaintiff's general experts, Dr. Mark Packer, Richard McKinley, Dr. Lawrence Lustig, and others opined there were safer alternative designs that were free from the CAEv2's defects. *See* Ex. 4 (Plaintiff's Rule 26 Expert Disclosures); Ex. 5 (Packer Report at 105-06); Ex. 6 (McKinley Report) at 90-109; Ex. 7 (Lustig Report) at 54-55. These safer alternative designs include the CAEv1, Ex. 5 (Packer Report) at 105-06; CAE versions 3, 4, and 4.1, *id.* at 106; Surefire Sonic Defender, *id.*, Moldex Battle Plugs, *id.*, and custom

molded earplugs, *id.*, all/many of which were available at the time that Plaintiff used the CAEv2. *See generally* Ex. 6 (McKinley Report) at 90-109 (same products); Ex. 7 (Lustig Report) at 54-55. The Court has already found these experts are qualified to testify as to safer alternative designs. MDL Dkt. 1680 at 95-96 (Packer), 92-93 (McKinley).

At the outset of his report, Dr. Tyler states that based on his review of other expert reports already produced in the 3M litigation, "there were safer alternative hearing protection devices available during her military service." Ex. 2 (Tyler Report) at 11-12. Dr. Tyler concluded to a reasonable degree of medical certainty that Plaintiff's injuries could have been significantly reduced or prevented by using one or more of those available alternative products rather than the CAEv2. *Id.* Plaintiff has provided ample uncontroverted testimony (in the form of both case-specific and general expert opinions) on safer alternative design to withstand Defendants' request for summary judgment on her design defect claims.

**5.    Plaintiff has produced substantial evidence from which a jury could find that Defendants' failure to warn was the cause of Plaintiff's injuries.**

Defendants argue that Plaintiff's warnings claims should be dismissed because Plaintiff did not set forth sufficient evidence of causation. [Doc. 16 at 9-11]. This argument is meritless.

Under the AEMLD, a manufacturer of goods has a duty to "exercise reasonable diligence" to warn "persons likely to be injured by the product" of imminent dangers arising from intended use. *King v. S.R. Smith, Inc.*, 578 So.2d 1285 (Ala. 1991) (collecting authorities). A supplier of a product also has an independent duty under Alabama's common law to inform "those whom the supplier should expect to use the chattel […] or to be endangered by its probable use." *Purvis v. PPG Indus., Inc.*, 502 So.2d 714, 719 (Ala. 1987) (quoting Restatement (Second) of Torts § 388). In each case, the duty to warn applies to dangers "the defendant knows or should know." *See King*, 578 So.2d at 1287; *Purvis*, 502 So.2d at 719.

Notably, Defendants' causation arguments do not contest that the CAEv2 was dangerous, that they knew it was dangerous, or that they failed to communicate that danger to Plaintiff or the military—nor could they. Plaintiff has proffered unchallenged and previously admitted

expert testimony that the CAEv2 is unsafe due to a lack of warnings, including with regard to the CAEv2's tendency to imperceptibly loosen; its high-variability, low attenuation, and true NRR; and the yellow-end's inadequate protection from weapons fire. *See* Ex. 4 (Plaintiff's expert disclosure listing *inter alia* Mr. McKinley, Dr. Packer, and Dr. Arriaga); *e.g.*, Ex. 5 (general expert report of Dr. Packer) at 93-106.   And Defendants' own documents and employees show that the CAEv2 was unreasonably dangerous without warnings and additional instructions. *See* Ex. 8 (P-GEN-1); Ex. 9 (Hamer 2015 Tr.) at 87:5-24, 164:5-8, 165:12-166:1; *see also, e.g.*, Ex. 10 (P-GEN-122) (e-mail exchange explaining that the CAEv2 "will not reduce 190 db explosions to a safe level" and that "the CAE is not the optimal choice for the gun range"); Ex. 11 (P-GEN-2294) (email explaining that "[a] shooter should not go to the range and fire a box of shells with the yellow side"); Ex. 12 (*Sloan/Wayman* 1/12/22 Trial Tr.) at 52:13-16 ("most variable earplug" Defendants ever tested). Further, none of these risks were ever communicated to Plaintiff or the military.   *See* Ex. 12 (*Sloan/Wayman* 1/12/22 Trial Tr.) at 154:4-11 (213015 and Flange Report never shared with military); Ex. 13 (P-GEN-9).

Instead, Defendants argue that there is no evidence that end users like Plaintiff would have seen warnings. (*See* Mot. at 10 ("Roper did not read or rely on any instructions, warnings, [or] advertising when using the CAEv2").) But there is ample evidence—and certainly more than "a scintilla," which is all that's required here—that a warning would have made a difference in this case. *See E.R. Squibb & Sons, Inc. v. Cox*, 477 So.2d 963, 969 (Ala. 1985)

To make a *prima facie* showing of proximate causation on his failure-to-warn claim, Plaintiff must put forth "at least scintilla of evidence." *E.R. Squibb*, 477 So.2d at 969. In light of the imperceptible nature of the CAEv2's defects, at a bare minimum, there is sufficient evidence that had Defendants told Plaintiff about the need to fold back the flanges (and the risks of not doing so), and that the CAEv2 was inadequate for use around frequent gunfire, she would have either folded the flanges or used the safer quad flange earplugs. *See* Ex. 14 (S-GEN-19) ("It looks like the existing product has problems unless the user instructions are revised."). Furthermore, there is ample evidence that the military would have never purchased the CAEv2 at all had Defendants provided the adequate warnings and instructions the law requires. *See,*

*e.g.*, Ex. 9 (Hamer 2015 Tr.) at 174:11-15; Ex. 15 (Warren Tr.) at 213:24-214:17 (NRR of 11 would make it impossible to sell CAEv2); Ex. 13 (P-GEN-9); Ex. 16 (MPID); Ex. 17 (P-GEN-2602) (orders to "verify . . . that any 3M dual-ended Combat Arms Earplugs are not being used for hearing protection purposes.").

"It is for the factfinder to determine if the content and the methods used to convey the warnings to [the employer] were adequate under the circumstances and in light of the danger." *Reynolds v. Bridgestone/Firestone, Inc.*, 989 F.2d 465, 471 (11th Cir. 1993) (citing *Rhodes v. Interstate Battery Sys., Inc.*, 722 F.2d 1517, 1519 (11th Cir. 1984), and *Deere & Co. v. Grose*, 586 So.2d 196, 199 (Ala. 1991)). Accordingly, Plaintiff has raised a triable issue of fact as to whether Defendants' failure to warn proximately cause his injuries.

## 6.  Plaintiff's fraud-base claims present fact issues on the element of justifiable reliance.

Drawing all reasonable inferences in favor of Plaintiff—as the Court must do at this stage—Plaintiff has established justifiable reliance sufficient to avoid summary judgment on his fraud and misrepresentation claims. *See Wolff v. Allstate Life Ins. Co.*, 985 F.2d 1524, 1531 (11th Cir. 1993) ("The determination of whether the plaintiff's

reliance was justifiable is generally a question of fact for the jury to decide.") (citing *AT&T Info. Sys., Inc. v. Cobb Pontiac-Cadillac, Inc.*, 553 So.2d 529, 532 (Ala. 1989)). Under Alabama law, "a fraud claim may arise from a misrepresentation made to a third party," so long as Plaintiff relied on it. *Bush v. Tchrs. Ins. & Annuity Ass'n of Am.*, 2006 WL 3075539, at *3 (M.D. Ala. Oct. 30, 2006).

Here, there is sufficient evidence to put the question of Plaintiff's reliance to a jury. Defendants disseminated numerous false and misleading statements to the military that the CAEv2 would achieve specific NRRs and provide adequate protection if used as directed. The record establishes that Defendants misrepresented the safety of the CAEv2 directly to the military, contemplating that servicemembers such as Plaintiff would rely on these misrepresentations. *See* Ex. 18 (Moses30b6 Tr.) at 281:16-25, 285:18-286:3 (military relied on Defendants' representations). Defendants represented, *inter alia*, that: (1) The CAEv2 would protect against impulse and steady-state noise, *e.g.*, Ex. 19 (3M_MDL000400759) (brochure stating "protective up to approximately 190 dBP" and "sufficient to cover most of the weapons in the military inventory, including shoulder-fired rockets"); (2) The CAEv2

would fit most, if not all, users, *e.g.*, Ex. 20 (3M_MDL000345403) (CAEv2 advertisement promoting "Premolded triple-flange design fits most earcanals"); Ex. 21 (3M_MDL00011968 at 69) (3M PowerPoint highlighting the CAEv2's "One-Size-Fits-All-Approach"); and (3) The CAEv2 would prevent permanent hearing damage, *e.g.*, Ex. 22 (3M_MDL000281766) (CAEv2 poster stating "[h]ear the action now, hear life later"); Ex. 23 (3M_MDL000345403) ("The chance of permanent hearing damage . . . is greatly reduced or eliminated."). And, as described above, Plaintiff received instructions on the CAEv2 and relied on what he learned in deciding to use the CAEv2 for protection for hazardous noise and for its hear-through capabilities.

Defendants challenge the claims—the making of a false statement—by criticizing Plaintiff's memory. But the claims require only that a false representation be made, not that the plaintiff remember its substance word for word. *See, e.g.*, Restatement (Second) of Torts § 552 (referring only to the provision of "false information," not a particular statement); *see also id.* § 533 (stating the maker of a fraudulent misrepresentation is liable for misstatements made through a third person when "its *substance [is] communicated* to the other") (emphasis

added).  As this Court has explained, what matters is the substance of the representations, not the "precise language." *Adkins*, 7:20-cv-12, Dkt. 110 at 6-7.  Additionally, there is evidence that Plaintiff reasonably and foreseeably relied on Defendants' misrepresentations in choosing to use the CAEv2 during his military service.  *See* Part IV, *supra*. As in other cases where reliance can be indirect, Plaintiff has presented a sufficient evidentiary basis for a reasonable jury to conclude that Defendants made affirmative misrepresentations to the United States military regarding the CAEv2 that Plaintiff relied on to his detriment.  *See Beal*, 7:20-cv-00006, Dkt. 113 at 4-5.[3]

**7.   Punitive damages are a question of fact and Plaintiff is entitled to pursue her punitive damages claim at trial.**

In *Hines v. Riverside Chevrolet-Olds, Inc.*, the Alabama Supreme Court noted that the question "whether there is clear and convincing evidence of wrongful conduct that will support an award of punitive damages does not arise until trial…" 655 So.2d 909, 926 (Ala. 1994),

---

[3] Defendants also move for summary judgment on the grounds that Plaintiff has not met Federal Rule of Civil Procedure 9(b)'s requirement that he plead facts of the alleged fraud with particularity. Although challenges to the sufficiency of pleadings are not prohibited at the summary judgment stage, that is not what Defendants attempt here. They instead argue that Plaintiff's *evidence* fails to specifically identify the statements he will argue constitute fraud at trial. Because this is a challenge to the sufficiency of Plaintiff's *evidence*—and not his *pleadings*—Defendants' reliance on Rule 9 is misplaced, and his claims are instead evaluated under Rule 56's standards, *vis a vis* Alabama substantive law.

*overruled on other grounds*, *State Farm Fire & Cas. Co. v. Owen*, 729 So.2d 834 (Ala. 1998). This lawsuit is far from trial and thus the question of whether the evidence will support an award of punitive damages is not ripe. This Court should, therefore, deny Defendants' request for summary judgment on Plaintiff's punitive damages claim.

## II. <u>Conclusion</u>

Based on the foregoing, (1) Plaintiff provided sufficient evidence of her CAEv2 use to create a fact issue precluding summary judgment as requested in Subsection I of Defendants' Motion; (2) Plaintiff provided competent, admissible expert testimony from Dr. Richard Tyler on causation and thus the remainder of Subsection I of Defendants' Motion should be denied; (3) Plaintiff's strict liability claims should not be dismissed but rather construed under the AEMLD and Subsection II.A of Defendants' Motion should therefore be dismissed; (4) Plaintiff provided enough expert testimony of a safer alternative design to withstand summary judgment, so Subsection II.B of Defendants' Motion should be denied; (5) Plaintiff has produced substantial evidence from which a jury could find that Defendants' failure to warn was the cause of Plaintiff's injuries and Subsection II.C of Defendants' Motion should

therefore be denied; (6) Plaintiff's fraud-based claims present fact issues on the element of justifiable reliance and Subsection II.E of Defendants' Motion should be denied; and (7) whether evidence of wrongful conduct will support an award of punitive damages does not arise until trial, so Subsection III of Defendants' Motion is not ripe and should be denied.[4]

DATED: August 9, 2022

**Respectfully submitted,**

By: */s/ Joshua H. Bauer*

**REICH & BINSTOCK LLP**
Dennis C. Reich
Texas State Bar No. 16739600
Joshua H. Bauer
Texas State Bar No. 24084380
4265 San Felipe, Suite 1000
Houston, Texas 77027
Tel: (713) 622-7271
Fax: (713) 623-8724
dreich@reichandbinstock.com
jbauer@reichandbinstock.com

*Attorney for Plaintiff*

---

[4] Plaintiff is not responding to Subsections II.D, II.F, II.G, II.H or II.I of Defendants' Motion.

## <u>CERTIFICATE OF COMPLIANCE</u><br><u>WITH LOCAL RULES 7.1(F)</u>

I hereby certify that this motion complies with the word limit of

Local Rules 7.1(F) and contains 2,878 words.

*/s/ Joshua H. Bauer*             

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 9, 2022, I caused a copy of the

foregoing to be served on all counsel of record via CM/ECF.

*/s/ Joshua H. Bauer*